**ACE CYCLE WORLD, INC.,**
**Plaintiff-Appellant,**

v.

**AMERICAN HONDA MOTOR CO.,**
**INC., Defendant-Appellee.**

**No. 85–2359.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1986.

Decided April 11, 1986.

A. Leo Weil, IV, Edward L. Schuller & Assoc., Chicago, Ill., for plaintiff-appellant.

David A. Anderson, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, Ill., for defendant-appellee.

Before WOOD, FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff, Ace Cycle World, Inc. ("Ace"), appeals from the district court's F.R.Civ.P. 12(b)(6) dismissal for failure to state a cause of action under the Illinois Motor Vehicle Franchise Act, Ill.Rev.Stat. ch. 121½, § 751 et seq. Ace brought this action against American Honda Motor Co. ("Honda") in an attempt to enjoin the latter from selling another motor scooter franchise within a close proximity to plaintiff's existing Honda dealership. A 1983 amendment to the Act protects franchisees from the creation of a new franchise within a ten mile radius of their existing operation. At issue here is the retroactivity of that amendment and whether under the facts of this case retroactive application is even relevant. Finding that application of the amendment to the contractual relationship in this case would be contrary to the Illinois court's interpretation of the statute, we affirm.

### I.

Honda and Ace initially entered into a franchise arrangement in March of 1983 whereby Ace would sell Honda motor scooters in a market area that Honda had the power to define "from time to time." It is undisputed that Honda never provided Ace with notice of the scope of the franchisee's market area. At this time the contract was subject to section 754(e)(8) of the Act (Ill.Rev.Stat. ch. 121½, § 754(e)(8)) that prohibited as an unfair trade practice the establishment of a new franchise within the "relevant market area" of an existing franchise under section 752(p) of the Act. Market area was the geographic scope defined by the franchise agreement. The Act was amended in the latter part of 1983 by the addition of section 752(q) which defined the term "relevant market area" for purposes of section 754(e)(8) as the greater of "the area within a 10 mile radius from the principal location of the franchise" or the area defined in the franchise agreement.

In early March of 1985, prior to the expiration of the 1983 contract, Honda notified Ace that it would establish on or around May 6, 1985 a new motor scooter franchise within four miles of Ace's dealership. Prior to objecting to the new franchise, Ace entered into a new two-year franchise agreement with Honda. The terms of the new contract were substantially identical to those of the previous agreement with the exception of an upward adjustment of the minimum net working capital, minimum owned equity, and lines of credit. This contract, however, did specifically state that it "terminates and supersedes ... all prior agreements with respect to Honda products." With the ink barely dry on the new contract Ace filed an action in the Circuit Court of Cook County seeking an injunction based on the Franchise Act preventing Honda from establishing the new franchise. The case was removed to federal court on the basis of diversity of citizenship.

The district judge, in a ruling from the bench, dismissed the action for failing to state a cause of action under the Act. The court found that Illinois courts have construed the Act to be prospective where there is a danger of impairment of vested rights in derogation of the contracts clause of the Constitution and that application of the amendment to the Act to rights vested under the 1983 contract would be contrary to Illinois law. Additionally, the district court expressed concern over Ace's good faith and fair dealing in light of the franchisee's silence concerning its objection to the new dealership while negotiating a new contract with Honda.

### II.

This appeal essentially revolves around two related issues. The first concerns which contract determines Honda's right under the Act. Ace was provided with notice under the 1983 contract but sued at the time the 1985 contract was in effect. Clearly if the 1985 contract is the backdrop for the determination of rights there can be no retroactivity problem since the contract would constitute an independent agreement entered into after the effective date of the amendments. Conversely, if Honda's rights are identified with reference to the 1983 contract (or, alternatively, if the 1985 contract is no more than a renewal of the 1983 agreement) the second issue of retroactive application must be reached.

### A.

Section 762(b) of the Act (Ill.Rev.Stat. ch. 121½, § 762(b)) provides in pertinent part that "[i]f the franchisor and the franchisee have not agreed to submit a dispute involving ... the granting of an additional franchise to arbitration ..., a proceeding for a remedy other than damages shall be commenced by the objecting franchisee ... within 60 days of the date the franchisee received *notice* of the granting of an additional franchise." (emphasis added). Compliance with the statute of limitations is not at issue, since Ace filed suit within 60 days of notice. What is important is that the cause of action accrues at the time specified in the statute; in this case that occurred at the time of notice. *Cf. Meeker v.*

*Summers,* 70 Ill.App.3d 528, 26 Ill.Dec. 919, 388 N.E.2d 920, 921 (1979). Since notice of the grant of the new franchise creates Ace's right against Honda, the relative rights of the parties must be determined as of that date regardless of the date suit is actually brought. To hold otherwise would allow the nature of the underlying claim to vary with the time suit is brought. Under these circumstances the only relevant contract to this action is the 1983 agreement, the one in effect at the time the cause of action accrued.

Complicating the above analysis is the fact that the letter Honda sent to Ace has been described by the parties as a notice of intent to establish a franchise on May 6, 1985 rather than a notice of a grant. Ace, in reliance on *Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1218 (7th Cir.1982), argues that it is the grant which is relevant and a notice of intent results in the accrual of nothing until the actual grant. While that is a true statement of the law, the facts of the present case and Ace's own conduct indicate that this is not the situation faced here. Honda indicated that it *"will* establish" a new dealership with a specified person at a specified location on a specified date.[1] Thus the letter indicates more than mere general intent and provided Ace with a sufficient amount of ammunition to bring an action under section 762(b). There is, however, more than the letter. Ace, while contending the establishment date of May 6 is the relevant date, responded to the letter as a notice of grant. As their briefs before this court make clear Ace believed it had a cause of action under 762(b) in early March and had to file its lawsuit within 60 days. If the letter does not constitute notice that a claim against Honda had been created and the action did not arise until the grant,

which Ace claims would occur on May 6, 1985, then Ace would have had no standing in April 1985 to call upon the court since its cause of action under 762(b) had not occurred yet. Clearly, this is not the plain meaning of a letter saying "we will open ..." nor the interpretation of Ace, which by filing this lawsuit indicated that the letter was evidence that conduct implicating the Act had already occurred.

### B.

The intermediate appellate courts of Illinois have uniformly found that the Motor Vehicle Franchise Act will not be applied retroactively and that application of the Act to a franchise agreement that preexisted the Act is retroactive and thus an impermissible burden on vested contractual rights. *See Fireside Chrysler-Plymouth Mazda, Inc. v. Chrysler Corp.,* 129 Ill. App.3d 575, 84 Ill.Dec. 724, 472 N.E.2d 861 (1984) (denying retroactive application of the 1983 amendments at issue here); *Marquette National Bank v. Loftus,* 117 Ill. App.3d 771, 73 Ill.Dec. 267, 454 N.E.2d 11 (1983); *McAleer Buick-Pontiac Co. v. General Motors Corp.,* 95 Ill.App.3d 111, 50 Ill.Dec. 500, 419 N.E.2d 608 (1981). *See also North Broadway Motors, Inc. v. Fiat Motors of North America, Inc.,* 622 F.Supp. 466 (N.D.Ill.1984); *Ford Motor Co. v. Lee,* No. 82 C 1706, slip op. (N.D.Ill. Jan. 23, 1984). Thus, to the extent Honda had a vested right under the 1983 contract to establish the new dealership, see part III, *infra,* Illinois law would preclude the later amendments to the Act from defeating the right. *See generally McAleer,* 95 Ill. App.3d 111, 50 Ill.Dec. at 502, 419 N.E.2d at 610 (law is applied retroactively to action occurring after the effective date of the law if the act was done pursuant to a

---

1. The full text of the letter reads as follows:

   I wish to let you know that American Honda will be establishing a Honda motor scooter dealer in Chicago, Illinois. The new dealer's address will be 6801 N. Clark, Chicago, Illinois.

   We intend to have this dealer operating on or after May 6, 1985.

   Won't you please join us in welcoming R.P.M. Honda to the family of Honda motor scooter dealers.

   Based on the language of the letter, Ace's interpretation of it as a letter of intent is tenuous at best. The clear import of the document is that it is a notification of completed action and Ace neither offers nor alleges anything, other than its conclusory description of the letter, that would tend to establish an alternative meaning.

contract preexisting the Act). Under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) this court would appear to be bound by the law of Illinois on retroactivity.

This matter, however, is slightly more complicated. To varying extents, the Illinois decisions deny retroactivity because, in their view, it would be violative of the contracts clause of the Federal Constitution. Clearly, a federal court need not defer to a state's interpretation of the Federal Constitution. *See generally* 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, *Federal Practice and Procedure* § 4030 (1977). In this appeal, in contrast to the "model" contracts clause case, the issue is not a state law that is allegedly impairing a vested contractual right. Rather, this is a situation where state courts *may* be giving contractual rights more protection than constitutionally required. Nothing in the Constitution requires Illinois to apply its statutes to the full extent permissible under the contracts clause. Nevertheless, if Illinois based its application of the Act *solely* on an interpretation of the Constitution, it would be incumbent on this court to review that decision fully because Ace would be asserting an injury based on a misreading of federal law. An analysis of the Illinois case law, however, indicates that the state would in all likelihood reach the same result on policy grounds regardless of whether the asserted constitutional grounds are erroneous.

■ The first state decision, *McAleer*, viewed the rule against this type of retroactivity as "grounded at least in part" on constitutional guarantees. 95 Ill.App.3d 111, 50 Ill.Dec. at 502, 419 N.E.2d at 610. The court did not decide that retroactive application would be unconstitutional; it stated that as a rule of construction it would adopt the approach which did not implicate a possible constitutional problem. *Id.* 50 Ill.Dec. at 503, 419 N.E.2d at 611. The subsequent decision in *Marquette National Bank* did not discuss the constitutional underpinnings of retroactivity. When faced with an argument based on a Michigan case allowing the retroactive application of a similar statute, the court simply asserted that Illinois law is to the contrary. 73 Ill.Dec. at 268–69, 454 N.E.2d at 12–13. A year later another appellate panel in *Fireside* denied retroactive effect relying almost exclusively on constitutional grounds. 84 Ill.Dec. at 729, 472 N.E.2d at 866. From these cases it is difficult to fathom fully the underpinnings of Illinois law. Obviously there are important elements of constitutional interpretation contained in these decisions; there also appears to be a basic tenet of Illinois statutory construction that may extend beyond the protections of the Constitution. *Cf. Scuncio Motors v. Subaru of New England*, 715 F.2d 10, 12–13 (1st Cir.1983) (basic rules of statutory construction in Rhode Island prohibit retroactive application of a similar franchise statute). In these circumstances, an opinion discussing the limits of the contracts clause could be nothing more than an advisory opinion to the Illinois courts since it is likely that Illinois, as a general matter, does not apply its franchise laws to contracts in existence at the time the Act was passed, in the absence of the insertion by the legislature of a retroactivity clause. Therefore, we decline to reach the constitutional issue and accept that under Illinois law the 1983 amendments to the Act do not apply to the 1983 contract.

### III.

■ The only way to sustain Ace's cause of action would be to sustain a claim under the 1983 contract and the pre-amendment provisions of the Act. It is under these conditions that Honda's claim to have a vested contractual right to open a new franchise must be evaluated. The 1983 contract failed to provide a description of the market area of Ace's dealership. Prior to the 1983 amendments, it had been held that the scope of the relevant market area was limited to that area described in the franchise agreement, and if none was specified, none existed. *Scala/O'Brien Porche*

*Audi, Inc. v. Volkswagen of America, Inc.*, 87 Ill.App.3d 757, 43 Ill.Dec. 205, 410 N.E.2d 205, 208 (1980). Thus, notwithstanding the squabble between the parties over who was responsible for obtaining or providing a statement of market scope, Honda had a vested contractual right under the 1983 contract to establish a new dealership in proximity to Ace. Since Honda exercised this right prior to the expiration of that contract Ace has no remedy under the Illinois Act.

The district court's dismissal of plaintiff's action is AFFIRMED.