USCA1 Opinion

 

 November 24, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1176 UNITED STATES OF AMERICA, Appellee, v. FRANCES SLADE, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ Evan Slavitt, with whom Hinckley, Allen, Snyder & Comen was _____________ _______________________________ on brief, for appellant. J. Carol Williams, Attorney, Environment & Natural Resources _________________ Division, U.S. Department of Justice, with whom Vicki A. O'Meara, ________________ Acting Assistant Attorney General, Jacques B. Gelin and H. Claire ________________ _________ Whitney, Attorneys, were on brief, for the United States. _______ _________________________ _________________________ SELYA, Circuit Judge. This appeal challenges the SELYA, Circuit Judge. ______________ district court's refusal to grant a new trial to a criminal defendant on the basis of evidence that the defendant claims was newly discovered. We affirm. I I On October 4, 1989, a jury found Frances Slade, a managerial employee of MacDonald & Watson Waste Oil Company (M & W), guilty of two counts of knowingly causing a hazardous waste to be transported to an unpermitted facility in violation of section 3008(d)(1) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6928(d)(1) (1988). On appeal, we affirmed the convictions of several defendants (including Slade) whilst vacating the convictions of Eugene D'Allesandro (M & W's president) and Narragansett Improvement Company (holder of the RCRA permit under which M & W operated in Rhode Island). See ___ United States v. MacDonald & Watson Waste Oil Co., 933 F.2d 35 _____________ _________________________________ (1st Cir. 1991). Phillip Lavigne, the former manager of M & W's Boston office, did not testify at the original trial. During D'Allesandro's retrial, however, the government called Lavigne as a witness. In the course of his testimony, Lavigne recounted the substance of certain conversations in which he and Slade had participated. These conversations related to the events underlying Slade's conviction.1 On December 11, 1991, Slade ____________________ 1On November 18, 1991, the judge presiding at D'Allesandro's second trial granted D'Allesandro's motion for the entry of a judgment of acquittal. 2 moved for a new trial, citing this testimony as newly discovered evidence. The district court concluded that the evidence in question "consist[ed] of facts that were clearly known to [Slade] at the time of [her] trial." Hence, it denied relief. This appeal followed. II II Freshly discovered evidence is sufficiently sturdy to warrant a new trial in a criminal case only if (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) the failure to learn of it was not a result of the defendant's poor diligence; (3) the new evidence is material; and (4) the impact of the new evidence is so strong that an acquittal would probably result upon retrial. See United States v. ___ ______________ Natanel, 938 F.2d 302, 313 (1st Cir. 1991), cert. denied, 112 S. _______ _____ ______ Ct. 986 (1992); United States v. Martin, 815 F.2d 818, 824 (1st _____________ ______ Cir.), cert. denied, 484 U.S. 825 (1987); United States v. _____ ______ _____________ Wright, 625 F.2d 1017, 1019 (1st Cir. 1980). The defendant must ______ shoulder the burden of establishing each facet of the four-part test. See Natanel, 938 F.2d at 313; Wright, 625 F.2d at 1019. ___ _______ ______ Because the district court is usually in a much better position to judge the credibility of the witnesses and to assess the highly nuanced relationship between the purported new evidence, and what previously transpired at trial, we treat the district court's handling of such motions with considerable deference. Consequently, we will reverse a denial of a motion 3 for new trial premised on newly discovered evidence only for manifest abuse of the district court's informed discretion. See ___ Natanel, 938 F.2d at 313. _______ III III It would serve no useful purpose to rehearse the factual predicate on which Slade's conviction rests. For one thing, we have already discussed those facts at some length. See ___ MacDonald & Watson, 933 F.2d at 39-40. For another thing, our ___________________ resolution of this appeal hinges not so much on the factual framework as it does on the procedural posture of the appeal. A A The hazardous waste that was allegedly brought to an improper facility at Slade's direction consisted of contaminated soil from the so-called Master Chemical property. At D'Allesandro's second trial, Lavigne testified that Slade "explicitly informed the heads of MacDonald & Watson's Boston and Rhode Island offices that MacDonald & Watson could not accept the soil from the Master Chemical site . . . ." In her motion for a new trial, Slade posited this bit of testimony as new evidence. She hypothesized that, by using Lavigne's testimony to show that she had, on earlier occasions, rejected samples from the Master Chemical site, she would have undermined the prosecution's theory that she knowingly permitted the illegal dumping. Although acknowledging that a person's own conversations can rarely constitute "new" evidence, Slade argued that these particular conversations were the exception that proved the rule because she 4 "did not remember speaking to . . . Lavigne at any time regarding the chemical analysis for the Master Chemical cleanup . . . ." The district court declined to buy what Slade was selling. It denied her motion on the ground that Slade could not satisfy the first prong of the four-part test. The court based this ruling on its finding that the facts to which Lavigne testified were clearly known to Slade at the time of her trial. B B On appeal, Slade recasts Lavigne's testimony, this time highlighting different aspects. She argues that the nascent fact is Lavigne's statement that soil samples marked "CDM Dorchester" were in fact samples from the Master Chemical site. Slade now concedes that she did not forget about the conversations in which she rejected the Master Chemical soil samples, but says that she never knew the soil was from the Master Chemical site.2 Although Slade's presentation below and her presentation before us involve the testimony of the same witness, the similarity ends there. The two contentions one about certain conversations and the other about the marking of soil samples pull from that testimony distinctly different factual threads and weave them into different legal patterns. We cannot countenance this sort of asseverational embroidery. As a general rule, appellate litigators should winnow their stable of legal arguments, retaining their most effective ____________________ 2We note that this new stance seemingly contradicts the very premise of the affidavit which Slade filed below in support of her motion for a new trial. 5 claims and putting unpromising claims to pasture before seeking appellate review. This rule does not mean, however, that litigants remain free to shift horses in midstream. Here, Slade attempted just such an interstitial feat. Following the district court's denial of her motion for a new trial, she apparently reassessed the field, decided her old argument was lame,3 and now seeks to ride a fresh mount in a new direction. Her attempt fails. It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals. See, e.g., Hernandez-Hernandez v. ___ ____ ___________________ United States, 904 F.2d 758, 763 (1st Cir. 1990); Clauson v. ______________ _______ Smith, 823 F.2d 660, 666 (1st Cir. 1987) (collecting cases); _____ United States v. Figueroa, 818 F.2d 1020, 1024 (1st Cir. 1987). _____________ ________ In this case, Slade's neoteric theory that her misunderstanding about the significance of the soil-sample labels constituted new evidence surfaced for the first time on appeal. Consequently, it runs afoul of our well-settled rule. C C Slade tries to scale this towering obstacle in two ways. First, she suggests that a passing mention of the soil- ____________________ 3Because the defendant has neither briefed nor argued the proposition that she advanced below, we need not consider the district court's rejection of that proposition. After all, theories neither briefed nor argued on appeal are deemed to have been waived. See, e.g., United States v. St. Cyr, ___ F.2d ___, ___ ____ _____________ _______ ___ (1st Cir. 1992) [No. 92-1639; slip op. at 4]; United States _____________ v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. _______ _____ ______ 1082 (1990). 6 sample labels in her motion for a new trial sufficed to acquaint the district court with the labels' validity as new evidence, thereby warding off waiver. Second, she asserts that the raise- or-waive rule is inapplicable since she is not introducing new facts on appeal but simply offering a revised take on how Lavigne's testimony constitutes new evidence. Neither point succeeds in freeing appellant from the condign consequences of her procedural default. 1. 1. __ Passing allusions are not adequate to preserve an argument in either a trial or an appellate venue. See United ___ ______ States v. Zannino, 895 F.2d 1, 17 (1st Cir.) ("Judges are not ______ _______ expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal citations and quotation marks omitted), cert. denied, 494 U.S. 1082 (1990); Paterson- _____ ______ _________ Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d ___________ ________________________________________ 985, 990 (1st Cir. 1988) (similar). This is such a case. In her motion for a new trial, Slade mentioned the soil-sample labels only once. She did not discuss the importance of the labels in the argument section of her motion nor did she portray the labeling as especially relevant to her legal theories. The transcript of Lavigne's testimony ran some sixty- odd pages and covered numerous topics. It is not the district court's responsibility either to cull post-conviction testimony in search of promising factual scenarios or to hunt for 7 attractive legal arguments not articulated in the motion papers. A litigant cannot ignore her burden of developed pleading and expect the district court to ferret out small needles from diffuse haystacks. Cf., e.g., Mele v. Fitchburg Dist. Court, 850 ___ ____ ____ _____________________ F.2d 817, 822 (1st Cir. 1988) (quoting Rivera-Gomez v. Adolfo de ____________ _________ Castro, 843 F.2d 631, 635 (1st Cir. 1988)). In a nutshell, ______ because Slade did not develop her current argument regarding the significance of the soil-sample labels in the district court, she cannot press it on appeal. 2. 2. __ Slade's thesis that only new facts and not new arguments about those facts are prohibited from debuting in the court of appeals is grounded more in hope than in precedent. Judges are not obliged to do a movant's homework, searching sua ___ sponte for issues that may be lurking in the penumbra of the ______ motion papers. Thus, the raise-or-waive rule applies with full force when an appellant tries to present a new theory about why facts previously placed on record are determinative. See United ___ ______ States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991); Clauson, 823 ______ _____ _______ F.2d at 666. Phrased another way, a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court. See, ___ e.g., Dietz, 950 F.2d at 55; United States v. Pilgrim Mkt. Corp., ____ _____ _____________ __________________ 944 F.2d 14, 21 (1st Cir. 1991); Brown v. Trustees of Boston _____ ___________________ Univ., 891 F.2d 337, 357 (1st Cir. 1989), cert. denied, 496 U.S. _____ _____ ______ 937 (1990); Libertyville Datsun Sales, Inc. v. Nissan Motor _________________________________ _____________ 8 Corp., 776 F.2d 735, 737 (7th Cir. 1985). Were the rule _____ otherwise, little would be resolved in the trial courts. D D It is true, as appellant points out, that appellate courts retain the power to dispense with the raise-or-waive rule in order to avoid a gross miscarriage of justice. See Hernandez- ___ __________ Hernandez, 904 F.2d at 763; United States v. La Guardia, 902 F.2d _________ _____________ __________ 1010, 1013 (1st Cir. 1990); United States v. Krynicki, 689 F.2d _____________ ________ 289, 291-92 (1st Cir. 1982). However, this power should be exercised sparingly. It is reserved for "exceptional cases," La __ Guardia, 902 F.2d at 1013, in which the previously omitted ground _______ is "so compelling as virtually to insure appellant's success." Hernandez-Hernandez, 904 F.2d at 763 (citation omitted). The ___________________ case at hand does not meet these rigorous criteria. At bottom, Slade seeks to raise a factbound issue which, if presented at trial, might or might not have influenced the jury's verdict. The confusion over the labeling of the soil samples does not appear to be overwhelmingly exculpatory. To the contrary, the government's case against Slade still seems substantial. After all, she negotiated the contract with Master Chemical which specified the chemical content of the contaminated earth and the new evidence does not address this crucial fact. We consider it unlikely that the additional evidence, on either of Slade's theories, would have 9 been so compelling as to assure Slade's victory at trial. Hence, the miscarriage-of-justice exception cannot be invoked.4 IV IV We need go no further. Slade has waived the argument that she pressed below and, therefore, cannot be heard to complain about the district court's rejection of that argument. By the same token, she is estopped from pursuing at this late date a newly emergent argument never presented to the lower court. Because Slade, by her own devices, is caught between the Scylla of abandonment and the Charybdis of procedural default, her appeal founders. Affirmed. Affirmed. ________ ____________________ 4At the expense of carting coal to Newcastle, we also remark the improbability that Slade, on either of her espoused versions, could overcome the due diligence prong of Natanel's four-part _______ test. Either way, Slade was chargeable with knowledge of Lavigne's involvement, yet made no effort to produce him at trial. 10